**SO ORDERED.**

**SIGNED this 4 day of March, 2014.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                              CASE NUMBER:
                                                    12-06333-8-SWH
JAMES M. ADAMS, SR.,

    DEBTOR

### ORDER ALLOWING MOTION FOR TURNOVER

The matter before the court in this chapter 7 case is the motion for turnover filed by special counsel for the chapter 7 trustee, Richard D. Sparkman ("the trustee"), under 11 U.S.C. § 542. Objections to the motion for turnover were filed by both the debtor and the debtor's non-filing spouse, Gayle Adams ("Mrs. Adams"). The trustee filed a supplemental memorandum in support of his motion on January 3, 2014, to which the debtor and Mrs. Adams responded on January 6, 2014, with a joint memorandum in support of their objections. A hearing was held in Raleigh, North Carolina, on January 7, 2014.

### BACKGROUND

On September 4, 2012, an involuntary petition was filed against the debtor under chapter 7 of the Bankruptcy Code and the order for relief was entered by this court on October 25, 2012. In general terms, the debtor is in the business of residential land development, with most of the

development projects being owned by separate limited liability companies or business entities of which the debtor is a member or has an ownership interest. The debtor also has interests in multiple rental properties. In the motion for turnover, the trustee seeks to recover payments to the debtor in connection with accounts receivable as identified in the debtor's Schedule B.[1]

In addition, the trustee seeks the debtor's proportional (*i.e.*, one-half) share of rents from several rental properties. In particular, the debtor owns real property as a tenant in common with his son, James M. Adams, Jr., including mobile homes located at 15 Bobby Lane, 20 Bobby Lane, 25 Bobby Lane, 202 Robbins Road and 236 Robbins Road in Franklinton, North Carolina[2] ("the Mobile Homes"). The Mobile Homes produce monthly rental income. The debtor did not claim his interest in the Mobile Homes as exempt pursuant to 11 U.S.C. § 522 and the laws of the State of North Carolina. The debtor also owns commercial real property with Mrs. Adams as tenants by the entireties, specifically property located at 822 S. White Street, Wake Forest, North Carolina, consisting of seven separate offices and nicknamed "Barn 2." This property also produces monthly rental income. In the debtor's Schedule C-1, he claimed his interest in Barn 2 as exempt pursuant to 11 U.S.C. § 522(b)(3)(B) and the laws of the State of North Carolina.

The trustee argues that with respect to both Barn 2 and the Mobile Homes, the debtor's share (50%) of the post-petition rents are property of the estate under 11 U.S.C. § 541(a)(6). In response,

---

[1] In his response, the debtor concedes that funds paid into the estate based upon accounts receivable owed to the debtor as of the petition date are property of the estate and agrees to pay those funds over to the trustee upon a determination of the exact amount owed. The trustee's motion on this point will be allowed without objection. If the parties are unable to reach consensus regarding the amounts to be paid, that issue may be brought before the court.

[2] The court presumes these five properties are the five mobile home park lots located in Franklinton, NC, but the debtor's schedules are not clear on this point.

2

the debtor and Mrs. Adams (collectively, "the Adamses") assert that because Barn 2 is held in a tenancy by the entireties, the rents derived from that property also are held by the entireties, such that in light of N.C. Gen. Stat. § 39-13.6, a creditor of only one spouse cannot subject *any* of the rents to execution of process. As for the Barn 2 properties, the debtor argues that rents derived from those properties constitute future rental payments exempted from execution on grounds that the rents are "earnings for services" performed by the debtor, within the meaning of § 541(a)(6) and N.C. Gen. Stat. § 1-362. For the reasons that follow, the court concludes that the trustee has the better of both arguments.

## DISCUSSION

The court turns first to the question of the rents from the real property held by the debtor and Mrs. Adams as tenants by the entireties. On this issue, the parties are in full agreement as to which statutes apply. The trustee is proceeding under 11 U.S.C. § 541(a)(6), which provides that the property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." The Adamses correctly point out that 11 U.S.C. § 522(b)(3)(B) also applies, and permits the debtor, "[n]otwithstanding § 541 of this title," to exempt "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law." The parties also agree that North Carolina state law is the applicable nonbankruptcy law. The sole issue is thus whether *rents* derived from real property held in a tenancy by the entireties also constitute, or are treated as, entireties property.

3

The trustee argues that the rents are, simply put, *just rents*, and that there is no basis upon which to extend to the rents the same protections given to the real property.  Upon full review of North Carolina statutory and case law, and the parties' arguments, the court agrees.

Longstanding North Carolina precedent makes clear that "an estate by the entirety in personal property is not recognized in North Carolina."  Bowling v. Bowling, 91 S.E.2d 176, 180 (N.C. 1956); quoted in Lovell v. Rowan Mut. Fire Ins. Co., 274 S.E.2d 170, 174 (N.C. 1981) (noting that this has "long been the rule").  When property held as tenants by the entireties is sold, "the cash proceeds are not held as tenants by the entirety, but rather, most often, as tenants in common."  Lovell, 274 S.E.2d at 174; see also Bowling, 91 S.E.2d at 180 ("Ordinarily, nothing else appearing, the proceeds from the sale of properties held by the entireties are held as tenants in common . . . .").  Indeed, the North Carolina Supreme Court has been quite clear on the subject: "We find no compelling reason to extend the reach of a common law fiction, the concept of entirety property, to include funds which, even at common law, could only be deemed personalty.  In North Carolina, as a general rule, the estate by the entirety exists *only in realty*."  In re Foreclosure Deed of Trust Recorded in Book 911, 279 S.E.2d 566, 567-68 (N.C. 1981) (reversing court of appeals' determination that surplus funds from the foreclosure sale of tenants by the entireties property retained the characteristics of that property) (emphasis added).

The Fourth Circuit touched on all of these points in Stubbs v. Hardee, 461 F.2d 480 (4th Cir. 1972), explaining:

> [U]nder the laws of North Carolina, real property held by the entireties, unless the debt be joint, generally is not subject to the claims of the creditors of either party to the marriage.  During coverture, neither party acting alone, may sell the land or his or her interest in it, and creditors of the husband, alone, or of the wife, may not levy upon the land or the single debtor's interest in it.  *Creditors of the husband, however,*

4

> *do have substantial and enforceable current interests in rents* and profits and contingent, prospective interests in the proceeds of sale.
>
> *It is settled that accruing rents and profits are attributed entirely to the husband and are subject to the claims of his creditors*. . . . Moreover, since there is no tenancy by the entireties in personalty, proceeds of sale or insurance are held by the parties to the marriage as tenants in common, one half being subject to the claims of the creditors of either spouse.

Id. at 482.  The takeaway point is that the rents and profits were not held as tenants by the entireties; to the contrary, they were reachable by creditors (albeit only, at that time, creditors of the husband).

The Adamses try to persuade the court otherwise, on two bases.  First, they point out that in 1982, the North Carolina legislature made significant changes to the comparative rights of a husband and wife to control the rents, profits and other proceeds derived from real property held as tenants by the entireties.  Prior to 1982, common law provisions rooted in the Dark Ages provided that the husband had complete control of all rents and proceeds from such real property, to the exclusion of the wife.  See, e.g., Hardee, 461 F.2d at 482.  As Hardee makes clear, a dichotomy existed between the treatment of rents and profits derived from the real property, and treatment of the proceeds derived from insurance or from a sale of the real property.  While sale and insurance proceeds were split 50-50, with "one half being subject to the claims of the creditors of either spouse," rents and profits remained mired in olden-day thinking that vested 100% of the control and enjoyment of rents and profits in the husband alone.  Id.

This changed with passage of N.C. Gen. Stat. § 39-13.6.  Under the new statute,

> (a) A husband and wife shall have an equal right to the control, use, possession, rents, income, and profits of real property held by them in tenancy by the entirety. Neither spouse may bargain, sell, lease, mortgage, transfer, convey or in any manner encumber any property so held without the written joinder of the other spouse....
> . . . .
> ( c) For income tax purposes, each spouse is considered to have received one-half (½) the income or loss from property owned by the couple as tenants by the entirety.

N.C. Gen. Stat. § 39-13.6. "This statute gives married women equal rights to use and control and obtain income from property held as entireties." Burgin v. Owen, 640 S.E.2d 427, 429 (N.C. App. 2007); see also In re Ulmer, 211 B.R. 523, 525 (Bankr. E.D.N.C. 1997) (pursuant to the statute, "each spouse has the equal right to control the use, possession, income and profits of the real property").

According to the Adamses' interpretation of the statute, rents that once were under the complete 100% control of the husband, as personalty reachable by creditors, are now under the shared 100% control of both husband and wife, as rents held by the entireties and unreachable by creditors of either individual spouse. This view supposes that the statute operates to confer upon rents derived *from* entireties property, the characteristics *of* entireties property. There are, as the Adamses have pointed out, jurisdictions in which statutes do exactly that. See, e.g., Moore v. Glotzbach, 188 F. Supp. 267, 270 (E.D. Va. 1960) (inferring, from state statutes, that "Virginia recognizes the right to hold personalty as tenants by the entireties"). North Carolina, however, is not one of them. The court believes this interpretation goes against the weight of extensive and solid precedent establishing that in North Carolina, the "[e]state by entirety exists only in realty." In re Foreclosure Deed, 279 S.E.2d at 568.

A more limited interpretation, and a more plausible one, is that after enactment of the statute, rents which once were under the complete 100% control of the husband, *as personalty reachable by creditors*, are now under 50/50 control of both husband and wife, *as personalty reachable by creditors*, to the extent of the husband or wife's interest. See William Reppy, North Carolina's Tenancy by the Entirety Reform Legislation of 1982, 5 Campbell L. Rev. 1, 9 (1982) ("The new Act does not say that the rents and profits are held in tenancy by the entirety (rather than in tenancy in

common), and thus departure from the common law rule against entirety ownership of personalty is not likely."). The court concludes that under North Carolina state law, absent the existence of an exception not applicable here, rents derived from real property owned as tenants by the entireties are not considered entireties property.[3]

The court turns now to the question of rents derived from the Mobile Homes, which the debtor owns with his son as tenants in common. The debtor argues that expected rents from these properties could be considered "earnings of the debtor for his personal services" and thus excluded from the estate under N.C. Gen. Stat. § 1-362,[4] and also within the meaning of § 541(a)(6), which includes in the debtor's estate "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, *except such as are earnings from services performed by an individual debtor after the commencement of the case*."

---

[3] "The general rule in North Carolina is that only real property may be held by the entirety, with *the only exception being the proceeds of entirety property arising from an involuntary sale*." In re Harris, 139 B.R. 386, 387 (Bankr E.D.N.C. 1992) (exception being limited to instances of involuntary conversion such as condemnation or eminent domain; foreclosure sales, being contemplated by contract, are not involuntary sales).

[4] That statute provides:

The court or judge may order any property, whether subject or not to be sold under execution (except the homestead and personal property exemptions of the judgment debtor), in the hands of the judgment debtor or of any other person, or due to the judgment debtor, to be applied towards the satisfaction of the judgment; except that the *earnings of the debtor for his personal services*, at any time within 60 days next preceding the order, cannot be so applied when it appears, by the debtor's affidavit or otherwise, that these earnings are necessary for the use of a family supported wholly or partly by his labor.

N.C. Gen. Stat. § 1-362.

Relying on Jacobi-Lewis Co. v. Charco Enterprises, 466 S.E.2d 338, 339 (N.C. App. 1996), the debtor contends that North Carolina courts would, pursuant to N.C. Gen. Stat. § 1-362, exempt the rents sought by the trustee from the definition of property of the debtor. In that case, the North Carolina Court of Appeals, in a brief opinion, held that "future rental payments are analogous to future earnings" and were thus beyond reach of the judgment debtor. In dissent, Judge Lewis expressed the view that there was "no precedent under North Carolina law which necessitates a finding that the two are analogous," and wrote that he found no basis upon which to treat definite, expected rental payments in the same manner as prospective earnings, "which result as a direct consequence of the debtor's labor or personal application of skill." Id. at 339-340 (Lewis, J., dissenting). Other than Jacobi-Lewis, the debtor cites no authority for the proposition that North Carolina courts would allow debtors to exempt expected rents from the reach of creditors.

More recently, the bankruptcy court for the Middle District of North Carolina, after careful consideration and a thorough analysis, expressly declined to follow Jacobi-Lewis on grounds that the opinion "strays too far from the language of N.C. Gen. Stat. § 1-362." In re Dillon, 2005 WL 1629923, at *3 (Bankr. M.D.N.C. 2005). In Dillon, the debtor urged the court to extend the holding of Jacobi-Lewis in order to allow the debtor to exempt disability insurance payments as earnings, reasoning that if rent could qualify as future earnings, then the disability insurance payments should qualify as future earnings too. Id. The court declined to do so, explaining that not only were the disability insurance payments outside the realm of § 1-362, but the rents at issue in Jacobi-Lewis appeared to be outside the statute too. A rent payment, the Dillon court observed, "in its commonly understood meaning, is the receipt of income for allowing another to use one's property; rent is payable based solely on a superior right of possession – not on the particular

intellectual or manual labor, service, or performance by the owner." Id. The Jacobi-Lewis court acknowledged that the § 1-362 exemption "'is further qualified in that the amount exempted . . . must have been 'acquir[ed] by labor, service, or performance.'" Id. (quoting Jacobi-Lewis, 466 S.E.2d at 338). Despite that limitation, the Jacobi-Lewis court treated the expected rent payments as future earnings withing the meaning of § 1-362. Jacobi-Lewis, 466 S.E.2d at 339. The Dillon court saw Jacobi-Lewis as inconsistent with the statutory language, and also inconsistent with established precedent to the effect that "North Carolina law has long recognized that a contractual right to receive rent payments in the future is a present property right that may be assigned." Dillon, 2005 WL 1629923, at *3 (discussing Standard Amusement Co. v. Tarkington, 101 S.E.2d 398, 403-04 (N.C. 1958)). For those reasons, the court concluded, the decision was "inconsistent with other North Carolina precedent and would not be followed by the North Carolina Supreme Court." Id.

Upon full review, this court agrees with both Judge Lewis's observations in dissent and the reasoning of the Dillon court, and finds no sound basis upon which conclude that North Carolina courts would apply the "earnings for personal services" exemption to the debtor's entitlement to half of the expected rents from the Mobile Homes. Pursuant to § 541(a)(6), rent from property of the estate is included as property of the estate.

## CONCLUSION

For the foregoing reasons, the trustee's motion is **ALLOWED**, the court concluding that the debtor's half-interest in rents received for Barn 2 and the Mobile Homes is included within property of the estate and is subject to turnover to the trustee pursuant to §§ 541 and 542.

Related to the issues addressed above, the trustee seeks an accounting of the post-petition rental income, including information regarding the use and/or benefit of the post-petition rental

income for both Barn 2 and the Mobile Homes.  In addition, the debtor contends in his response that if he is required by the court to turn over rents, that turnover should be limited to net as opposed to gross rents.  The parties may be able to come to agreement on these issues, and the court suggests that they endeavor to do so.

The debtor already has agreed to turn over accounts receivable to the trustee, subject to a determination of the exact amount owing, which will be addressed at the hearing currently scheduled for March 18, 2014.   If the parties cannot reach agreement on the documentation and amounts to be provided to the trustee with regard to the rents from Barn 2 and the Mobile Homes, the court will address those issues at the March 18 hearing.

**SO ORDERED.**

**END OF DOCUMENT**